The opinion of the court was delivered by
Duncan, J.
It is a matter of some surprise, that under an act passed more than 100 years ago, on a subject of frequent occurrence, which, from its nature, is so apt to create ill blood between, neighbours, we should have no reported decision. It is now for the first time to be decided, whether it be lawful for one man to kill another’s swine found on his land, whether they escaped from his neighbour’s pen, or he suffered them- to run at large, to his great annoyance? The argument on the part of the captor here is, that a hog is an outlaw, caput lupinum, and may be shot down like a mad dog. It is proper first to consider how this matter stood at the common law, review all our own aets of assembly, and then to decide, whether these fourteen hogs became forfeited. There is a difference between beasts that are ferae naturae, as lions and tigers, which a man must always keep up at his peril, and beasts that are mansuetas naturae, and break through the tameness of their nature, such as oxen and horses. In the latter case, an action lies if the owner has notice of the mischievous quality of the beast; but in the former case, an action lies without such notice. 2 Ld.Raym. 1583. And this doctrine has been applied to a boar ad mordendum animalia consuetas, if the owner knew of this habit. 2 Salk. 662. Id. Raym. 169. 12 Mod. 335, and there it is said, *395 there is a difference between a boar and a dog, for it is the nature of a dog, to kill animals which are ferae naturae, as cats, &c.,.but it is not natural to a boar to kill any thing. So that a boár, so far. from being an outlaw, is considered by the common law as a civil domestic animal mansuetas naturae, and I observe, the legislature have been petitioned this session, to exempt him from execution. But if the owner had been a trespasser, or otherwise in default, by the entering of his hogs into his neighbour’s premises, he could not in any manner, by anjr common law provision, have justified killing them. The law has provided ample remedies for such injuries: a remedy in rem, where the thing doing the damage gan be taken, and this secures a satisfaction; but in that case, the party distraining cannot kill, injure, or otherwise use the distress; unless to preserve it, as milking a cow. It has also provided a remedy in personam by action, where the thing doing the injury for any cause cannot be distrained. There is no doubt but that a person having land adjoining another, and putting cattle on his land, which wanders into another’s lands, this is a trespass, because it is the duty of the owner to watch and guard them. But it is another question, whether under the act of 1705, “an act to prevent the running of swine at large,” a hog, if he escapes from his owner’s pen, has incurred the penalty of death. For this act is highly penal, introducing a new mode of procedure for divesting the owner of his property, unknown to the common law, and that without a trial or hearing. -
By the act of 1700, for regulating and maintaining fences, it is provided, that all corn fields, and grounds kept for inclosures, shall be well fenced with fences at least five feet high, &c. and whoever, not having their grounds inclosed with sufficient fence, shall hurt, kill, or do damage to any horse, kine, sheep, hogs or goats of any other person, by hurting or driving them out of said grounds, shall be liable to make good all damages sustained thereof to the owner. This act remains in force, except so far as it altered by the act of 1705. The title of the act is to prevent swine running at large. The power is to seize and kill such swine running at large without rings and yokes, and. the jurisdiction of the justice attaches only over such as shall be suffered to run at large. The question is, whether the description of swine running at large, is not a description of offence, by which the hog forfeits his life, and his owner his property in him. The person authorized is.the owner of the soil finding hogs; the hog to be seized and killed, if it so pleases the finder, is a hog suffered to go at large. The character of the man and of the hog, of the seizer, and of the seizee, are both described. The man is to be the owner of the land; his right is rations soli. As well might that description be omitted in the information to the justice, as the status of the hog, who is to be a hog suffered to run at large. The fact of the informant being owner, and of the hog running at large, must both appear on the justices re *396 cord to give him jurisdiction, must be set out. in his proceeding. It is not every man, or every hog, and we need not cite authority to prove this defect to be án incurable error, whatever the real fact might be. These proceedings are taken from Graydon’sPrecedents, a work in general of much accuracy; but this precedent is clearly defective in not stating that the swine were running at large. The omission here is not of an unessential, unimportant particular, but of a particular which constitutes the substance of that which-gives the justice jurisdiction. The act says, “no swine shall be suffered to go at large.” Now, the proceeding, call it conviction,- or what you will, terminating in an absolute forfeiture, should state that the owner of the soil found these hogs on his land, which the owner of the hogs had suffered to go at large. It never could have been in the contemplation of the legislature, that if the hogs escaped from the pen of the owner and ran to the lands of another, with or without his default, they should be ipso'facto condemned and forfeited as prize of war. The law is put into the hands of the owner of the soil. The restriction is of the use a man may make of his own property, on the maxim sic útero tuo at alienum non Ice das; he is not to injure another in the rights of his property. It is on this principle that nuisances are abated. The suffering a man’s hogs to go at large, unringed and unyoked, is a nuisance, because it is an act which necessarily must in its consequences injure the property of his neighbour unless he directly removes the cause; it is a voluntary act of bad neighbourhood. The act is voluntary on the part of the owner of the hogs: he violates the law with knowledge and must pay the penalty. But where the act is an involuntary trespass, where he keeps his hogs confined on his own premises, and they escape from his inclosures, not crassa negtigentia, for that might make the escape voluntary, to say the moment they passed the bounds of his own land, they might be slain, would be a very harsh and unreasonable law. For then, if the owner was driving them from one field to another, and- they ran over his own boundaries but one step, entered on his neighbour’s land for one moment, they are lost to him for ever, at least one half their value. Many distilleries-have large.piggeries, as part of the establishment, in which they fatten great numbers of swine, where each hog has his own bed of straw, his own. domicil. Should it be so, that some mischievous or careless boy, would leave open the door, and hundreds of them escaped, that they were to be shot down or snapped up if they ran over into the uniriclosed ground of his neighbour. Droves of many hundreds are brought from Ohio and other western states; the drovers hire a field for the night, in which they put them; unknown to them there is a breach in the fence, through which they run into the woodland of the adjoining tract; can the owner shoot them down ? A man has his winter stock of pork in his stye, ready for slaughter the next day; a gust'of wind throws down his stye in the night, and they run into'his neighbour’s land; *397 do they become quasi a deodand to the owner as lord of the ma-> nor, (it is an ill wind that blows nobody good). Or, a farmer putting in for a prize at a cattle show, in driving his hogs to the P.aoli, if some of- them should turn'to a wood, to the right or left of the turnpike, can the owner of the wood pick them up and call the justice to appoint appraisers, can he shoot them if they escape from a constable who has taken them in execution? For if, as is contended for, it is not the suffering to run at large that causes the forfeiture, then the escape of .the hog from the owner in any of these ways, would amount to forfeiture, and the constable could not take him on fresh suit. Even a sheriff, whose prisoner escapes by negligence of the keeper, and is absent for a day and a night, running at large, and the keeper knows not of it, but after-wards he has notice of it, if he make fresh suit after him and retake him, this is fresh" suit to excuse him. This would be a construction which outrages all reason and sense, and if such has been the practical construction of justices of the peace, it has been a most erroneous practice, and the sooner it is changed the better.
I do not find any fault with the form followed by the justice' except in the particulars I have stated. The act does not seem to require any adjudication by the justice, nor is the appointment of appraisers in the nature of process which the constitution requires, should be in the name of the commonwealth. It is sufficient for the justice in the description of offences of this nature, to pursue the words of the statute, and he is not confined to the legal form requisite in an indictment. For though all acts which subject men and their property to new and other trials than by jury, are to be taken strictly, yet when such an act is made, one ought to pursue the intent of the makers, and expound it in so reasonable a manner, that it may be executed, but it is incumbent on a judge to take great cape that he does not go beyond the act, as is said by Lord Holt, in Rex v. Chandler, 1 Ld. Rayn, 582. Now, here I am clearly of opinion, the justice went beyond his jurisdiction, and as he has not set out in this proceeding the description of the- act in the words of the statute, which caused the forfeiture, for 'this reason alone the proceeding should be quashed. I have, not-noticed the objection on constitutional grounds; indeed, the court would not endure it to be seriously argued, that this act was an invasion of private rights, and therefore, tacitly repealed by the constitution, and so grave a subject ought not to be treated lightly.
The question is not made, nor is it necessary now to say, how far this procedure, founded altogether on the oath ,of the party in interest, both as to finding of the hogs, and his being'the owner of the land in which they were found, if regular, would be considered as conclusive oh the owner of the hogs in an action of trover or .trespass. But in this proceedure, where the want of jurisdiction appears on the very face, all, I consider, would be void, it'' is coran nonjudice, and examinable in the action at common law. *398 No objection is made to the writ of certiorari in point of form, ' and it is admitted, that if this question .in any shape is the proper subject of a certiorari, these proceedings are before the court, and the court are of opinion, that a certiorari Will well lie to reverse the proceedings; for this court will examine the proceedings of all jurisdictions created by act of assembly, and if they under pretence of such act, proceed to incroach jurisdiction to themselves, greater than the act warrants, this court will send a certiorari to them, to have the proceedings returned here, to the end, that this court may see that they keep themselves within their jurisdiction, and if they exceed it, to restrain them, Rex v. Inhabitants of Glamorganshire, 1 Ld.Raym, 580; and this superintendingpower can only be taken from this court by express words. Though the party on whose grounds a trespass has been committed by the entry of hogs who have escaped from the owner, cannot proceed under the act of assembly; his common law remedies are open to him by distress damage feasant, or by personal action against the owner, but not to pursue thisfeslinum remedium, this ultimum supplicium, for an accidental injury. The exercise of this remedy would keep a neighbourhood in eternal broil, and in the constant look out to trap each others hogs. The provision in the act respecting notice demonstrates the view of the legislature; directing notice to be placed on some tree near the high road side, clearly shows it to be a provision to protect against the injury owners of land might receive from hogs being suffered to run at large wild in the woods, which a hundred years ago was the. practice even in Philadelphia county. And in some of the western counties even at this day, this act is not in force, for in these counties it is not lawful for any person to kill, take or carry away any swine but in case of trespass, may take and impound them, and appraisers are annually elected to appraise the damages. 2 Sm. L. 91.
These proceedings must be quashed*

 See the act of 1705, 1 Smith’s Laws. 70. Purd. Dig. 632.